PD-0078-15

PD-0078-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/22/2015 4:28:19 PM
Accepted 1/28/2015 10:54:17 AM
ABEL ACOSTA
CLERK

No._____

In the
Court of Criminal Appeals

———————◆———————

No. 14-12-00096-CR
In the Court of Appeals for the Fourteenth District of Texas at Houston

———————◆———————

No. 1333231
In the 228th District Court of Harris County, Texas

———————◆———————

# JOSE VASQUEZ
*Appellant*
V.

# THE STATE OF TEXAS
*Appellee*

———————◆———————

# STATE'S PETITION FOR DISCRETIONARY REVIEW AFTER REMAND

———————◆———————

FILED IN
COURT OF CRIMINAL APPEALS

January 28, 2015

ABEL ACOSTA, CLERK

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**ERIC KUGLER**
Assistant District Attorney
Harris County, Texas
TBC No. 796910

1201 Franklin, Suite 600
Houston, Texas 77002
Tel.: 713-755-5826
FAX: 713-755-5809

*Counsel for Appellee*

ORAL ARGUMENT REQUESTED

## IDENTITY OF JUDGE, PARTIES, AND COUNSEL

Counsel for the State:

**Devon Anderson —** District Attorney of Harris County

**Eric Kugler** — Assistant District Attorney on appeal

**Eric Devlin** — Assistant District Attorney at trial

Appellant or criminal defendant:

**Jose Vasquez**

Counsel for Appellant:

**Mark Kratovil —** Assistant Public Defender on appeal

**James Stafford; Marcy Kurtz** — Counsel at trial

Trial Judge:

**Hon. Marc Carter** — Presiding Judge

i

# TABLE OF CONTENTS

IDENTITY OF JUDGE, PARTIES, AND COUNSEL.................................................i

INDEX OF AUTHORITIES ..................................................................... iii

STATEMENT REGARDING ORAL ARGUMENT...................................................v

STATEMENT OF THE CASE....................................................................vi

STATEMENT OF PROCEDURAL HISTORY ........................................................vi

STATEMENT OF FACTS ........................................................................1

GROUNDS FOR REVIEW ......................................................................3

    A.   The lower court's majority opinion erred in holding that the appellant preserved his two-step interrogation complaint for appellate review. ..................3

    B.   The lower court's majority opinion erred in holding that the appellant was subject to custodial interrogation prior to receiving and waiving his legal rights. 3

    C.   The lower court's majority opinion erred in holding that a two-step interrogation technique was deliberately employed by the police........................3

    D.   The lower court's majority opinion erred in holding that the appellant was harmed by the admission of his statement when there was overwhelming evidence of the appellant's guilt independent of his statement to the police.........3

ARGUMENT ..................................................................................4

PRAYER FOR RELIEF...........................................................................17

CERTIFICATE OF SERVICE AND COMPLIANCE.................................................18

# INDEX OF AUTHORITIES

**CASES**

*Barfield v. State*,
   416 S.W.3d 743 (Tex. App.—
   Houston [14th Dist.] 2013, no pet.)..................................................................7

*Batiste v. State*,
   AP-76,600, 2013 WL 2424134 (Tex. Crim. App. June 5, 2013)
   *cert. denied*, 134 S. Ct. 1000 (U.S. 2014) ...............................................7, 11

*Carter v. State*,
   309 S.W.3d 31 (Tex. Crim. App. 2010)....................................... 7, 13, 14

*Maxwell v. State*,
   73 S.W.3d 278 (Tex. Crim. App. 2002)............................................................12

*Missouri v. Seibert*,
   542 U.S. 600 (2004) ...................................................................................7

*Nguyen v. State*,
   292 S.W.3d 671 (Tex. Crim. App. 2009)............................................................8

*Oregon v. Elstad*,
   470 U.S. 298 (1985) ...................................................................................13

*People v. Delatorre*,
   B230591, 2012 WL 909659 (Cal. Ct. App. Mar. 19, 2012)................................15

*Phillips v. Bramlett*,
   288 S.W.3d 876 (Tex. 2009)....................................................................11

*Resendez v. State*,
   256 S.W.3d 315 (Tex. App.—
   Houston [14th Dist.] 2007)....................................................................10

*State v. Hughes*,
   272 S.W.3d 246 (Mo. Ct. App. 2008) ...............................................................15

*Vasquez v. State*,
14-12-00096-CR, 2014 WL 7365945 (Tex. App.—
Houston [14th Dist.] Dec. 23, 2014, pet. filed)......................................................v

*Vasquez v. State*,
397 S.W.3d 850 (Tex. App.—
Houston [14th Dist.] March 28, 2013, pet. granted) ..............................................v

*Vasquez v. State*,
411 S.W.3d 918 (Tex. Crim. App. 2013)................................................................v

**STATUTES**

TEX. CODE CRIM. PROC. art. 38.22 §3 (West 2010) ..............................................8, 9

**RULES**

TEX. R. APP. P. 33.1(a) ................................................................................. 10, 12

TEX. R. APP. P. 66.3 ............................................................................................4

TEX. R. APP. P. 68.2 ......................................................................................... vi

TEX. R. APP. P. 68.4 (c)......................................................................................v

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 68.4 (c), the State requests oral argument because the fact-finding by the majority opinion of the court of appeals played a decisive role in the outcome of this case, and an oral argument may help to further clarify the factual issues.

**TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:**

## STATEMENT OF THE CASE

The appellant was charged with the capital murder of Suu Nguyen and Aleksander Lobos (CR – 2). He pled "not guilty" to the charge, and the case was tried to a jury (CR – 159). The jury found the appellant guilty, and the court thereafter assessed punishment at life in prison.

## STATEMENT OF PROCEDURAL HISTORY

The appellant appealed, and the court of appeals reversed the conviction, finding that the appellant's statement to the police was the result of a two-step interrogation and that he was harmed by the admission of that statement. *Vasquez v. State*, 397 S.W.3d 850 (Tex. App.—Houston [14th Dist.] March 28, 2013, pet. granted). This Court vacated and remanded for the trial court to make factual findings. *Vasquez v. State*, 411 S.W.3d 918 (Tex. Crim. App. 2013). After the trial court made findings supporting the admission of the statement, the court of appeals again reversed the conviction over a strong dissent. *Vasquez v. State*, 14-12-00096-CR, 2014 WL 7365945 (Tex. App.—Houston [14th Dist.] Dec. 23, 2014, pet. filed) (attached as Appendix A). This petition for discretionary review is timely if filed on or before January 22, 2015. TEX. R. APP. P. 68.2.

## STATEMENT OF FACTS

In April 2010, Walter Gallo and Luis Ollevera wanted some marijuana; so Gallo called Walter Martinez, one of the appellant's close friends, in order to get one pound of "hydro," a higher-quality type of marijuana (RR. III – 193-195, 263-264).  Martinez apparently set up a meeting with Suu Nguyen and Aleksander Lobos to acquire the marijuana (St. Ex. 150).  Nguyen drove a Toyota Scion, and Lobos owned an Infiniti G35 (RR. IV – 32) (St. Ex. 77).

When Martinez went to meet Nguyen and Lobos, the appellant and some other friends accompanied him (St. Ex. 150).  There were two cars parked on the street at the meeting place: Lobos's Infiniti and Nguyen's Scion; both Nguyen and Lobos were sitting in the Scion (St. Ex. 59-78, 150).  The appellant was carrying a revolver in his waistband (St. Ex. 150).  At some point during the transaction, the appellant pulled out his revolver, pushed open the Scion's door, and shot both Nguyen and Lobos (St. Ex. 150) (RR. V – 52) (St. Ex. 150).  Lobos sustained two fatal gunshot wounds: one to his head and the other to his chest (St. Ex. 108) (RR. IV – 156-160).  Nguyen also suffered two fatal gunshot wounds: one to the back of his head and the other to his back (St. Ex. 109) (RR. IV – 138-147).  The appellant or his accomplices stole the marijuana and the Infiniti (RR. III – 224, 269-270) (RR. V – 52, 55) (St. Ex. 35-38).

Martinez told Gallo to be at his house at around 11:00 p.m. that evening (RR. III – 199, 262, 264). He also told Gallo to enter the house through the back yard (RR. III – 201-202, 265). When Gallo and Ollevera arrived, they saw about ten guys, including the appellant, who appeared to be "hyped up," jumpy, and celebrating (RR. III – 204-205, 211, 219, 261, 266-267, 305).

The appellant stated that he had shot and killed two people for a bag of weed (RR. III – 205, 214, 268) (RR. IV – 34-35). He was holding a bag of marijuana, and he showed it to Gallo (RR. III – 211, 223, 269). Gallo stated, "Y'all murdered these people for that, for that bag?" (RR. III – 225). But Gallo also saw the Infiniti inside the garage and learned that the car had been taken during the murders (RR. III – 224, 269-270) (St. Ex. 35-38). The appellant did not appear to be remorseful over the murders (RR. III – 272).

Gallo had been inside Martinez's house for about ten minutes when the police arrived (RR. III – 225, 272). He was so paranoid that he jumped the fence into the neighbor's yard and ran away, but he was eventually caught (RR. III – 226-228). Ollevera did the same with similar results (RR. III – 273-275). The officers entered Martinez's house and found a large bag of marijuana on top of the living-room sofa (RR. IV – 30). The Infiniti parked in the garage belonged to Lobos (RR. IV – 32).

More than two weeks after the murders, the police tracked the appellant to an apartment complex on South Post Oak (RR. IV – 65, 81). As the officers were attempting to enter the apartment, a neighbor yelled that some guys were jumping off of the second-story balcony at the back of the apartment (RR. IV – 70). The suspects, including the appellant, started running down Post Oak, but the police chased them to a nearby gas station where the appellant was finally detained (RR. IV – 70-71). The appellant then gave a videotaped statement to homicide detective Richard Bolton in which he admitted to shooting both of the victims (St. Ex. 150).

## GROUNDS FOR REVIEW

A. **The lower court's majority opinion erred in holding that the appellant preserved his two-step interrogation complaint for appellate review.**

B. **The lower court's majority opinion erred in holding that the appellant was subject to custodial interrogation prior to receiving and waiving his legal rights.**

C. **The lower court's majority opinion erred in holding that a two-step interrogation technique was deliberately employed by the police.**

D. **The lower court's majority opinion erred in holding that the appellant was harmed by the admission of his statement when there was overwhelming evidence of the appellant's guilt independent of his statement to the police.**

## ARGUMENT

This petition for discretionary review should be granted because the justices of the court of appeals disagreed on a material question of law necessary to the court's decision and because the analysis used by the majority opinion has so far departed from the accepted and usual course of judicial proceedings so as to call for an exercise of this Court's power of supervision. TEX. R. APP. P. 66.3. Specifically, the majority opinion held that the two-step-interrogation issue was preserved for appellate review when the trial court thought that the appellant was making a different objection. Furthermore, the majority opinion failed to defer to the explicit factual findings of the trial court where there was evidence in the record that the appellant was not subject to custodial interrogation prior to receiving his legal rights. The majority opinion also erred in finding deliberate misconduct by the police when there was no support in the record for such a conclusion. Finally, the majority opinion erred in holding that the appellant was harmed by the admission of his statement to the police when he bragged of his crime to numerous friends, showed the fruits of the crime, and ran from the police.

The appellant filed a written pre-trial motion to suppress his confession, claiming that his statement was taken without a proper warning of his constitutional and statutory rights and that he was illegally arrested (CR – 54-55). The trial court carried the motion with the trial; when Detective Bolton was called

4

to testify, the trial court held a hearing outside the presence of the jury at which the appellant and Bolton were the only witnesses (RR. IV – 79, 95). The trial court apparently believed that the only purpose of the hearing was to address the voluntariness of the appellant's statement (RR. IV – 80-81).

Detective Bolton testified that the appellant was initially interviewed on April 16 and that Bolton was called in to conduct the formal interview that evening (RR. IV – 81, 85). Bolton testified that his partner, Investigator Padilla, had interviewed the appellant prior to the formal statement and that Bolton had monitored the interview, although there was conflicting evidence on that issue (RR. IV – 86, 87, 89). During the following exchange with the appellant's counsel, Bolton testified that Padilla had given the appellant his legal warnings prior to questioning him:

Q. So, there was a time when both individuals were telling you they were not involved and didn't know what you were talking about.

A. The defendants?

Q. Yes.

A. Yes.

Q. That be fair to say?

A. Yes, sir.

Q. And when any other officers read them their Miranda warnings, you don't know or if they were read at all 'cause you weren't there?

5

A. Yes, I was there. I was in the monitoring room. When they entered the room, you know, they read the defendant – and when they interviewed Mr. Martinez, they also read him his legal warnings as well.

(RR. IV – 87). The trial court found, based on its evaluation of the witnesses' testimony and credibility, that "Bolton credibly testified that Padilla had given the defendant his legal warnings prior to questioning him," and that "any statements indicating that Padilla had not given the defendant his legal warnings prior to questioning him are not credible." (CR Supp. – 23) (attached as Appendix B).

Bolton did not start talking to the appellant until 10:00 or 10:30 p.m., and did not take the formal videotaped statement until around midnight (RR. IV – 90-91). He stated that he gave the appellant his legal warnings, and indeed the video begins with Bolton stating, "I'm gonna read your rights to you like I did a little earlier." (St. Ex. 150). He testified that the delay in taking the formal interview was an effort to build rapport with the appellant (RR. IV – 88).

The appellant testified during the suppression hearing that the officers never read him his legal warnings when they first started talking to him (RR. IV – 97-98). The appellant further claimed that he repeatedly told the officers that he did not want to talk to them (RR. IV – 99). He admitted that he knew his rights because he had been placed in a homicide office once before (RR. IV – 99). But

6

the trial court found that the appellant's testimony was not credible (CR Supp. – 23-24).

The appellant's argument on appeal, and the basis for the lower court's reversal, was *Missouri v. Seibert*, 542 U.S. 600 (2004). *See Vasquez*, 2014 WL 7365945, *4 (citing *Seibert* and *Carter v. State*, 309 S.W.3d 31, 36–37 (Tex. Crim. App. 2010)). But the appellant's two pre-trial motions to suppress made no mention of *Seibert* or "midstream warnings" or a "two-step interrogation." (CR – 54, 76). *See Barfield v. State*, 416 S.W.3d 743, 749 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Batiste v. State*, AP-76,600, 2013 WL 2424134, *16 (Tex. Crim. App. June 5, 2013) *cert. denied*, 134 S. Ct. 1000 (U.S. 2014) ("At trial, appellant did not make any reference to *Seibert*, *Carter*, "two-step questioning," "question first, warn later," or any other argument that might raise an issue under *Seibert*.")).

It was not until closing argument at the suppression hearing, after the trial court had already ruled on the briefed suppression issue, that the appellant first mentioned a "two-step interview." (RR. IV – 105). Even at that point, the appellant made no mention of *Seibert*, and it was clear that the trial court did not understand the nature of the objection. Rather, the trial court believed that it was merely another aspect of the briefed issue.

The focus of the written suppression motions was the voluntariness of the appellant's statement and the State's compliance with Article 38.22 of the Code of Criminal Procedure, which governs the admission of oral statements. *See* TEX. CODE CRIM. PROC. art. 38.22 §3 (West 2010). The appellant began his closing argument at the suppression hearing by citing *Nguyen v. State*, 292 S.W.3d 671 (Tex. Crim. App. 2009), which deals with Article 38.22 but makes no mention of *Seibert* and is not a "midstream warnings" case (RR. IV – 104-105). The trial court overruled the appellant's complaint, and the appellant then claimed that it was a "two-step interview." (RR. IV – 105-106). The trial court responded,

> All right. Only the video statements are admissible. Statements that he made that were not *videoed* are not admissible in the State's case in chief. But any statements that he made outside the *video* still could fall under, you know, 613 impeachment, in the event that he should testify. And then he could be impeached on inconsistency under 613. Otherwise, they don't come in.

> All right. So, I guess what I'm doing *is I'm granting your motion in part*. All right. So, any statements that he makes outside the *video*, outside of the Miranda warnings that were stated on the *video* do not come in. I'm still leaving it open in the event that it might be inconsistent. It could come in for some other purpose.

(RR. IV – 106) (emphasis added). The trial prosecutor then confirmed that he only intended to "introduce the officer, circumstances and play the *video*." (RR. IV – 107) (emphasis added).

Neither the trial court nor the trial prosecutor understood the nature of the appellant's new *Seibert* objection, which was being raised for the first time at the

end of the suppression hearing. The trial court thought that the appellant's "two-step" objection referred to the fact that some of the interview was videotaped and some of the interview was not because Article 38.22 requires that the entire statement be recorded. *See* TEX. CODE CRIM. PROC. art. 38.22 §3 (West 2010).

The trial court's response focused on the videotape, which is crucial to an Article 38.22 Section 3 challenge. *See* TEX. CODE CRIM. PROC. art. 38.22 §3 (West 2010) ("No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless: (1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement."). But the presence of a videotape is irrelevant in a *Seibert* analysis. *See Carter*, 309 S.W.3d at 38 ("We therefore join numerous state and federal jurisdictions in adopting Justice Kennedy's concurrence in *Seibert* because it is narrower in scope than the plurality opinion and applies only to two-step interrogations involving deliberate police misconduct.").

Furthermore, the trial court believed that it was "granting [the] motion in part," which makes sense in the context of Article 38.22 but makes absolutely no sense in the context of a *Seibert* motion. If there were a violation of Article 38.22, then the trial court could suppress that portion of the statement that was involuntary or that was not recorded. *See, e.g., Resendez v. State*, 256 S.W.3d 315,

9

327 (Tex. App.—Houston [14th Dist.] 2007) *rev'd on other grounds*, 306 S.W.3d 308 (Tex. Crim. App. 2009) ("Because the interrogation of appellant was custodial from the point after which appellant admitted he shot the complainant, the trial court erred in denying appellant's motion to suppress this part of appellant's statement based on appellant's failure to receive the required warnings from the law enforcement officers or waive his rights.") (citing TEX. CRIM. PROC. CODE art. 38.22, § 3). But if there were a *Seibert* violation, then the entire statement should be suppressed. *Carter*, 309 S.W.3d at 37 ("the interrogation technique used with *Seibert* undermined the goals of *Miranda* and thus required suppression.").

The appellant did nothing to correct the trial court's mistaken impression concerning the nature of the second objection, and the trial prosecutor did not recognize it as a veiled *Seibert* issue. Fortunately, the appellant cannot profit by his failure to clarify the issue for the trial court. *See* TEX. R. APP. P. 33.1(a) ("As a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion that: (A) stated the grounds for the ruling that the complaining party sought from the trial court with *sufficient specificity to make the trial court aware of the complaint*, unless the specific grounds were apparent from the context…") (emphasis added).

In *Phillips v. Bramlett*, 288 S.W.3d 876, 882-83 (Tex. 2009), the defense counsel objected to closing argument as follows: "Judge, I object to any testimony about the propriety of other trials and the verdicts reached by other juries in Lubbock." The trial court responded: "This is his argument, and it is not testimony." The defense counsel did not offer any further explanation of his objection, and the plaintiffs' counsel thereafter continued to argue that the jury needed to send a message to the doctors of Lubbock without further objection. The Texas Supreme Court cited Rule 33.1 and agreed that "the asserted error was not preserved because the trial court's response indicated that it did not understand the objection, and counsel made no further attempt to clarify the court's understanding or obtain a ruling on his objection." *Phillips*, 288 S.W.3d at 883.

In the present case, the appellant never referenced *Seibert*, *Carter*, "question first, warn later," or "mid-stream warnings" in either of his written motions to suppress or at any time during the proceedings. *See Batiste*, 2013 WL 2424134, *16 ("At trial, appellant did not make any reference to *Seibert*, *Carter*, "two-step questioning," "question first, warn later," or any other argument that might raise an issue under *Seibert*."). He waited until after the trial court had overruled his Article 38.22 argument to finally mention the term "two-step interview." (RR. IV – 105). But the trial court's response showed that it mistakenly believed that the appellant was still objecting based on Article 38.22. Therefore, the appellant failed

11

to object with sufficient specificity to make the trial court aware of the complaint, and his sole point of error should have been overruled. *See* TEX. R. APP. P. 33.1(a); *Phillips*, 288 S.W.3d at 883; *Vasquez*, 2014 WL 7365945, *16-18 (Frost, J., dissenting) ("Because appellant did not timely raise the 'question first, warn later' complaint, he failed to preserve error in the trial court, and this court may not reverse the trial court's judgment based on this complaint.").

Even if the appellant had properly preserved his appellate complaint, the majority opinion nevertheless erred in finding a *Seibert* violation. As stated previously, the trial court made the factual finding that Padilla had given the defendant his legal warnings prior to questioning and that any statements to the contrary were not credible. (CR. Supp. – 23). The majority opinion erred in failing to respect the trial court's authority to make such findings. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002) ("At a suppression hearing, the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses and their testimony.").

The majority opinion also failed to respect the trial court's discretion in finding that "any delay in the administration of *Miranda* warnings was due to an effort to build rapport with the defendant rather than to intentionally circumvent the protections of *Miranda*." (CR. Supp. – 25-26). The central question when determining the admissibility of post-*Miranda* warning confessions made after

12

*Miranda* violations is whether the evidence shows that the officer deliberately employed a two-step "question first, warn later" interrogation technique to circumvent the suspect's *Miranda* protections. *Carter v. State*, 309 S.W.3d 31, 36–37 (Tex. Crim. App. 2010). Because the question of whether the interrogating officer deliberately employed such a technique "will invariably turn on the credibility of the officer's testimony in light of the totality of the circumstances surrounding the interrogation," a factual finding regarding the officer's credibility is entitled to "highly deferential review." *Id.*, 309 S.W.3d at 40.

When a two-step questioning tactic has not been deliberately employed, "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." *Oregon v. Elstad*, 470 U.S. 298, 318 (1985). When the first statement is unwarned but not coerced, the admissibility of any subsequent statement turns on whether it is knowingly and voluntarily made. *Id.*, 470 U.S. at 309; *Carter*, 309 S.W.3d at 32.

In the present case, the only evidence that the appellant was subject to custodial interrogation prior to receiving his legal warnings came from the appellant's mouth (RR. IV – 97-98). But the trial court explicitly disbelieved the appellant's testimony at the suppression hearing (CR. Supp. 23-24). *See Guzman*, 955 S.W.2d at 89; *Ervin*, 333 S.W.3d at 213–14 ("Because the trial court found

13

credible the officers' testimony that appellant was not in custody ... even if the officers erred in their belief that she was not in custody, that error does not amount to a deliberate tactic to circumvent *Miranda*.").

The majority opinion concluded, contrary to the trial court's findings, that the fact that the appellant was in custody and gave both statements to officers at a police station "indicates that the absence of *Miranda* warnings before the beginning of the interrogation process was not a mistake but rather a conscious choice." *Vasquez*, 2014 WL 7365945, at *11. But as this Court has related, "the trial judge's assessment of the interrogating officer's subjective intent is especially important under Justice Kennedy's approach in *Seibert*…We therefore adopt the position of those federal and state courts that have applied a highly deferential review—similar to our *Guzman* standard—of the question of an officer's subjective 'deliberateness' in the 'question first, warn later' context." *Carter*, 309 S.W.3d at 40.

In *Seibert,* the interrogating officer testified at the suppression hearing that he made a "conscious decision" to withhold *Miranda* warnings, thus resorting to an interrogation technique he had been taught: question first, then give the warnings, and then repeat the question "until I get the answer that she's already provided once." *Seibert*, 542 U.S. at 605-06. That was sufficient to show a deliberate intent to circumvent the protections of *Miranda*. *Id.*

In the present case, Detective Bolton testified that the delay in taking the appellant's formal interview was an effort to build rapport with the appellant (RR. IV – 88). He stated that, ""sometimes it's like hours, you know, just to get – to build rapport with the individual. You know, we talk to them about a number of things, about family." (RR. IV – 88). Furthermore, the trial court explicitly found that "any delay in the administration of *Miranda* warnings was due to an effort to build rapport with the defendant rather than to intentionally circumvent the protections of *Miranda*." (CR. Supp. – 25-26). Therefore, any delay in administering legal warnings to the appellant in the present case was due to permissible rapport-building rather than to the impermissible activity of *Seibert*. *See, e.g., People v. Delatorre*, B230591, 2012 WL 909659, *5 (Cal. Ct. App. Mar. 19, 2012) (finding no *Seibert* violation where officer testified that the "conversation began, we began talking, a rapport was built, and it wasn't until some facts started to come out that I realized I had forgotten to *Miranda*."); *State v. Hughes*, 272 S.W.3d 246, 255 (Mo. Ct. App. 2008) (finding no *Seibert* violation where officers' pre-waiver questioning was to build a rapport). The trial court's ruling should have been upheld.

Finally, even if the majority opinion below were correct on the *Seibert* violation, it nevertheless erred in determining that the appellant was harmed by the admission of his statement. The evidence supporting the appellant's guilt,

independent of his recorded statement, was overwhelming. Both Gallo and Ollevera testified that the appellant was at Martinez's house shortly after the murder, and the appellant was bragging about having shot and killed two people for a bag of weed (RR. III – 204-205, 211, 214, 219, 261, 266-268, 305) (RR. IV – 34-35). The appellant was holding a bag of marijuana; he showed it to Gallo and did not appear to be remorseful over the murders (RR. III – 211, 223, 269, 272). Furthermore, the appellant fled from the police who were investigating these murders (RR. IV – 70-71). Finally, even the appellant's own witness admitted that the appellant had taken the marijuana from Nguyen and Lobos (RR. V – 49-50). Thus, it is unlikely that the admission of the appellant's videotaped statement had more than a slight effect on the jury's verdict, and the majority opinion below erred in holding otherwise.

## **PRAYER FOR RELIEF**

It is respectfully requested that this petition should be granted and that the majority opinion of the court of appeals should be reversed.

**DEVON ANDERSON**
District Attorney
Harris County, Texas

/s/ Eric Kugler
**ERIC KUGLER**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
kugler_eric@dao.hctx.net
TBC No. 796910

## CERTIFICATE OF SERVICE AND COMPLIANCE

This is to certify that: (a) the word count function of the computer program used to prepare this document reports that there are 3,765 words in the relevant sections; and (b) a copy of the foregoing instrument will be served by efile.txcourts.gov to:

Mark Kratovil                    Lisa McMinn
 Assistant Public Defender       State Prosecuting Attorney
Harris County, Texas             P.O. Box 13046
1201 Franklin, 13th Floor        Austin, Texas 78711
Houston, Texas  77002

/s/ Eric Kugler
**ERIC KUGLER**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
TBC No. 796910

Date: January 22, 2015

*Appendix A*

*Vasquez v. State,*
*14-12-00096-CR, 2014 WL 7365945*
*(Tex. App.—Houston [14th Dist.] Dec. 23, 2014, pet. filed))*

2014 WL 7365945
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.
MAJORITY OPINION
Court of Appeals of Texas,
Houston (14th Dist.

**Jose Vasquez**, Appellant
v.
The State of Texas, Appellee
NO. 14–12–00096–CR | Opinions filed December 23, 2014

**On Appeal from the 228th District Court, Harris County, Texas, Trial Court Cause No. 1333231**

**Attorneys and Law Firms**
Eric Kugler, for State Bar of Texas.

Mark Kratovil, for Jose Vasquez.

Panel consists of Chief Justice Frost and Justices Christopher and Jamison.

**MAJORITY OPINION**

Martha Hill Jamison, Justice
**\*1** Appellant Jose Vasquez appeals his conviction for capital murder. After the jury found him guilty, the trial court assessed punishment at life in prison. On appeal, we held the trial court erred in admitting appellant's videotaped confession and such error was harmful, reversed appellant's conviction, and remanded the case to the trial court. The Court of Criminal Appeals granted the State's petition for review, vacated our judgment, and remanded the case to our court with instructions to remand the case to the trial court for findings of fact and conclusions of law.[1] The trial court rendered findings of fact. Appellant reasserts his complaint that the trial court erred in denying appellant's motion to suppress the videotaped confession he made to an investigating officer during custodial interrogation. Appellant argues that his statement was obtained by an impermissible two-step interrogation technique. We again reverse the trial court's judgment and remand for a new trial.

***Background***
On April 16, 2010, appellant was arrested pursuant to a warrant and charged with two counts of capital murder.

Officers chased, apprehended, and handcuffed appellant at a gas station, placed him in a squad car, and transported him to the police station for questioning. Another suspect named Martinez had been with appellant and was arrested at the same time. Officers placed appellant in an interview room, where he remained for nearly eight hours while being interrogated by three or four investigating officers, including Officers Padilla and Evans. The officer who last questioned appellant, Officer Bolton, ultimately obtained a confession that was not captured on videotape. Soon thereafter, Bolton asked permission to videotape appellant's confession. Appellant complied with the request and repeated his confession.[2]

Appellant filed a written pretrial motion to suppress his confession on grounds that he was not given *Miranda*[3] warnings and he did not validly waive his rights before he confessed. Appellant subsequently filed another pretrial motion to suppress his oral statements on the sole ground that using the oral statements at trial would be prohibited by Texas Code of Criminal Procedure article 38.22, section 3.[4] The trial court carried the motions with trial and held a hearing outside the presence of the jury to determine the admissibility of the statements.

**\*2** At the hearing, only Bolton testified. He testified as follows:

> [Defense counsel:] And when you got involved ... Padilla ... and Evans had been going back and forth interviewing ... Martinez and [appellant], correct?
>
> [Bolton:] I believe they were interviewing the two defendants in the case. And also I think there was a witness that they interviewed.
>
> [Defense counsel:] ... And you were in ... a room where you could look inside while they were talking to [appellant].
>
> [Bolton:] Yes, sir.
>
> [Defense counsel:] And you could hear what Evans and Padilla [were] telling them.... You could ... see them and hear ... ?
>
> [Bolton:] Both
>
> [Defense counsel:] And when any other officers read them their *Miranda* warnings, you don't know or if they were read at all 'cause you weren't there?
>
> [Bolton:] Yes, I was there. I was in the monitoring room. When [Evans and Padilla] entered the room, you know, they read [appellant]—and when they interviewed ... Martinez, they also read him his legal warnings as well.
>
> [Defense counsel:] ... [W]here was [appellant] located when you saw Evans and Padilla talking to

him?

[Bolton:] ... I was not present when ... Padilla talked to [appellant]. I was in an interview room talking to ... Martinez. I was conducting an interview there while ... Padilla was speaking to [appellant]. So, I was not present when he spoke to him, you know....

[Defense counsel:] ... [Y]ou stayed in the little anteroom listening to somebody talking to [appellant] for a while. How long did you stay in there and listen to that?

[Bolton:] ... I didn't watch that interview. While ... Padilla or ... Evans, either one, was interviewing [appellant] ... I was interviewing ... Martinez.

[Defense counsel:] Okay. So what ... they said and what they did, you don't know other than what they told you he was saying.

[Bolton:] Yes, sir....

[Defense counsel:] And then eventually you decided to go talk to [appellant].

[Bolton:] After [I] interview[ed] Martinez, ... Padilla had already concluded whatever interview he had with [appellant].... And [Padilla] asked me ... to talk to [appellant]. So, at that time I went to the interview room and ... began the interview with [appellant].

Bolton testified that he gave appellant *Miranda* warnings, as reflected on the videotape, but did not testify that he had previously done so before appellant confessed off-camera:

> [Prosecutor:] ... Did you advise him of his legal rights and warnings?
>
> [Bolton:] Yes, sir, I did.
>
> [Prosecutor:] Did he appear—did you go through each individual legal right and warning with him?
>
> [Bolton:] Yes, sir, I did.
>
> [Prosecutor:] Did he appear to understand each individual legal right and warning?
>
> [Bolton:] Yes, he did.
>
> [Prosecutor:] Did he waive each individual legal right and warning that you gave him?
>
> [Bolton:] Yes, sir, **at the end.**
>
> [Prosecutor:] ... And did he agree to speak with you having waived those rights?
>
> [Bolton:] Yes, sir, he did.

(Emphasis added). Bolton did not clarify what he meant by "at the end."

At the beginning of the videotape recording, Bolton stated, "I'm going to read your rights to you like I did a little earlier," but he did not indicate on the videotape or in his testimony whether the "earlier" reading of his rights occurred before or after the previous confession had been made. Bolton further testified that appellant never invoked his rights to remain silent or have counsel present.

**\*3** Appellant testified he invoked his right to remain silent before custodial interrogation began and no officer gave him *Miranda* warnings until after he confessed off-camera. The trial court suppressed the statements that were not captured on videotape but admitted the videotaped confession.

On appeal, we concluded that the State did not meet its burden to present evidence that (1) officers read appellant his *Miranda* rights before appellant made off-camera incriminating statements; and (2) officers did not employ a two-step interrogation technique in a deliberate, calculated way to undermine *Miranda* warnings or take curative measures to ensure appellant would understand the import and effect of the *Miranda* warning and waiver. *Vasquez v. State,* 397 S.W.3d 850, 854–58 (Tex.App.—Houston [14th Dist.] 2013), *vacated,* 411 S.W.3d 918 (Tex.Crim.App.2013). We held that the trial court erred in admitting appellant's videotaped statement and such error was harmful. *Id.* at 858–59. We reversed the trial court's judgment and remanded the case for a new trial. *Id.* at 859.

The Court of Criminal Appeals ordered the trial court to determine on remand: (1) whether the original, unrecorded interview was custodial in nature; (2) whether appellant was Mirandized prior to his original interrogation; (3) if not, whether the police deliberately employed a two-step interrogation process; and (4) if they did, whether any curative measures were taken before the second confession. *Vasquez,* 411 S.W.3d at 920. The trial court made the following findings of fact, in relevant part, expressly "based upon the reporter's record in this case and based upon th[e] Court's evaluation of the witnesses' testimony and credibility"[5]:

> • Detective Bolton credibly stated that he gave the defendant his legal warnings, and that the defendant waived his rights prior to giving the statements, all of which is reflected on the video.
>
> • Bolton credibly testified that his partner, Investigator Padilla, had interviewed the defendant prior to the formal statement and that Bolton had monitored the interview.
>
> • Bolton credibly testified that Padilla had given the

defendant his legal warnings prior to questioning him.

• [A]ny statements indicating that Padilla had not given the defendant his legal warnings prior to questioning him are not credible.

• [T]he defendant was not credible when he testified during the suppression hearing that the officers never read him his legal warnings when they first started talking to him.

• [T]he defendant was not credible when he claimed that he repeatedly told the officers that he did not want to talk to them.

• Bolton credibly testified that the delay in taking a formal interview of the defendant was due to an effort to build rapport with the defendant.

• [T]he defendant's original, unrecorded interview was custodial in nature.

• [T]he defendant was Mirandized prior to his original interrogation.
• [E]ven if the defendant had not been Mirandized prior to his original interrogation, there was no evidence that the police deliberately employed a two-step interrogation process in order to circumvent the protections of Miranda and [there was evidence] that the police did not deliberately employ such a two-step interrogation process. Rather, any delay in the administration of *Miranda* warnings was due to an effort to build rapport with the defendant rather than to intentionally circumvent the protections of *Miranda.*

**\*4** • [C]urative measures were taken before the second confession by the following procedures: (1) there was minimal reference to the original interrogation in the defendant's recorded statement, (2) different officers conducted the two interviews, (3) a substantial amount of time elapsed between the original interrogation at 5:15 p.m. and the formal recorded statement after midnight, and (4) *Miranda* warnings were again given and waived prior to the second statement, which was recorded.

### *Discussion*

In his sole issue, appellant argues the trial court erroneously admitted the videotaped confession because it was obtained by an improper two-step "question first, warn later" interrogation technique. *See Missouri v. Seibert,* 542 U.S. 600, 622, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2003) (Kennedy, J., concurring); *Carter v. State,* 309 S.W.3d 31, 35–36 (Tex.Crim.App.2010). A "question first, warn later" interrogation technique consists of

officers interrogating a suspect and obtaining a confession without first providing *Miranda* warnings; then, after the inculpatory statements are made, officers provide *Miranda* warnings and obtain a waiver of the warnings. *See Seibert,* 542 U.S. at 604–05, 124 S.Ct. 2601. Officers then have the suspect repeat the inculpatory statements in an attempt to cure the lack of *Miranda* warnings.[6] *See id.* at 605, 124 S.Ct. 2601.

In reviewing a trial court's ruling on a motion to suppress, appellate courts must view all of the evidence in the light most favorable to the ruling. *State v. Garcia–Cantu,* 253 S.W.3d 236, 241 (Tex.Crim.App.2008). At a suppression hearing, the trial judge is the sole factfinder. *St. George v. State,* 237 S.W.3d 720, 725 (Tex.Crim.App.2007). We give almost total deference to a trial court's express determination of historical facts when supported by the record. *State v. Dixon,* 206 S.W.3d 587, 590 (Tex.Crim.App.2006); *State v. Ross,* 32 S.W.3d 853, 855–56 (Tex.Crim.App.2000). The same deference is accorded to determinations of mixed questions of law and fact if their resolution depends upon witness credibility and demeanor. *Ross,* 32 S.W.3d at 856.

Issues that present purely legal questions are considered under a de novo standard. *Dixon,* 206 S.W.3d at 590; *Ross,* 32 S.W.3d at 856. We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App.1996). In this connection, when the trial court files findings of fact with its ruling on a motion to suppress, we do not engage in our own factual review, but determine only whether the record supports the trial court's fact findings. *Paolilla v. State,* 342 S.W.3d 783, 792 (Tex.App.—Houston [14th Dist.] 2011, pet. ref'd).

Under *Miranda* and article 38.22 of the Code of Criminal Procedure, an oral statement of an accused made as a result of custodial interrogation is not admissible at trial unless the accused was warned of his rights and knowingly, intelligently, and voluntarily waived those rights. *Miranda v. Arizona,* 384 U.S. 436, 478–79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Tex. Code Crim. Proc. art. 38.22 § 3. If the record shows the warnings were received and understood by the accused and he did not invoke his rights, the accused waives the right to remain silent by making an uncoerced statement to the police. *Umana v. State,* 447 S.W.3d 346, ——, 2014 WL 4199116, at \*7 (Tex.App.—Houston [14th Dist.] Aug. 26, 2014, pet. filed). We review the totality of the circumstances as reflected in the record to determine whether the trial court's finding or conclusion that an accused voluntarily waived his rights finds support in the record. *Id.* at —— – ——, at \*8–9.

**\*5** In the plurality opinion *Missouri v. Seibert,* four justices of the Supreme Court concluded that a "question first, warn later" interrogation technique circumvented the

objective *of Miranda* by rendering any warnings given ineffective. *Seibert,* 542 U.S. at 611–13, 124 S.Ct. 2601; *see also Martinez v. State,* 272 S.W.3d 615, 619–20 (Tex.Crim.App.2008). The *Seibert* plurality found that the purpose of this interrogation technique was to obtain a confession the suspect may not have made if he had understood his rights at the outset. *Seibert,* 542 U.S. at 611, 124 S.Ct. 2601. In his concurring opinion in *Seibert,* Justice Kennedy determined that when a two-step interrogation technique is used in a deliberate, calculated way to undermine *Miranda* warnings, absent "curative measures," the post-warning statements must be excluded. *Seibert,* 542 U.S. at 622, 124 S.Ct. 2601 (Kennedy, J., concurring). In *Carter,* the Court of Criminal Appeals expressly adopted Justice Kennedy's concurrence in *Seibert. Carter,* 309 S.W.3d at 38.

## I. Issue Preserved for Appellate Review

The State filed a supplemental brief, arguing for the first time on remand that appellant did not preserve error on his appellate issue because neither of his two pretrial motions to suppress mentioned "*Seibert* or 'midstream warnings' or a 'two-step interrogation' " and appellant's counsel did not mention a "two-step interview" until closing argument at the suppression hearing. The State contends that the focus of the suppression motions was the "voluntariness of the appellant's statement and the State's compliance with Article 38.22 of the Code of Criminal Procedure, which governs the admission of oral statements."

To preserve an issue for appellate review, a defendant must first raise that issue in the trial court. Tex. R. App. P. 33.1(a). Eschewing hyper-technical requirements for preservation, the Court of Criminal Appeals stated, "[A]ll a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State,* 827 S.W.2d 907, 909 (Tex.Crim.App.1992); *see also Bedolla v. State,* 442 S.W.3d 313, 316 (Tex.Crim.App.2014).

In his first motion to suppress, appellant asserted that his:

> confession was involuntary and was coerced and enticed from [appellant]. [Appellant] was arrested around 11 a.m. and he didn't give a video statement until almost twelve hours later. He was not given his Miranda warnings and had requested an attorney. The officers persistently and coercively interviewed him and wore down his resistance and force[d] him to make

a statement.

In his second motion to suppress, appellant contended that he "may have made oral statements after his arrest and the use of [such statements] is prohibited by the Texas Code of Criminal Procedure, Article 38.22, Section 3." Under article 38.22, unrecorded statements of an accused obtained through custodial interrogation are not admissible in a criminal proceeding. Tex.Code Crim. Proc. art. 38.22 § 3. Recorded statements are admissible only if the voices on the recording are identified. *Id.* art. 38.22 § 3(a)(4).

We agree that the focus of the second motion to suppress was on the admissibility of appellant's unrecorded statements under article 38.22. However, the first motion was focused on the voluntariness of appellant's statement, purportedly taken after officers did not give appellant *Miranda* warnings, "persistently and coercively interviewed him[,] wore down his resistance[,] and force[d] him to make a statement."[7]

**\*6** At the suppression hearing, Bolton testified he Mirandized appellant "at the end" before recording his statement. Thus, the issue regarding voluntariness of appellant's confession in the context of midstream warnings was before the trial court. Also at the close of the hearing, appellant's counsel asserted the recorded statement was inadmissible under article 38.22, section 3 because the voices on the recording were not identified, but he then presented a second argument:

> And my next approach ... is I'm contending this is a two-step interview.... And once they got him to say what they wanted him to say, they took him in and videoed him and gave his Miranda warning and he told the story again. And I'm suggesting under the existing case law, that's illegal and the statement should be suppressed.

The trial court suppressed the unrecorded statements but not the video statement.

Terms such as "two-step questioning," "two-step interrogation technique," and "two-step question first, warn later" all refer to the practice of obtaining a confession and then giving *Miranda* warnings midstream during an interview of a suspect. *See, e.g., Carter,* 309 S.W.3d at 37 (referencing "two-step interrogation technique," "two-step strategy," and "two-step, 'question first, warn later' strategy" as potential violations of a suspect's *Miranda* protections). As set forth above, this interrogation technique is improper when employed in a deliberate, calculated way to undermine *Miranda* warnings, absent curative measures. *Id.* at 37–38. We conclude appellant's references to "two-step interview"

and officers' Mirandizing appellant only after "they got him to say what they wanted him to say" sufficiently apprised the trial court of appellant's objection that police violated his *Miranda* protections by employing an improper two-step interrogation technique.[8]

Moreover, the trial court's findings are directed toward the issues relevant to a *Seibert* challenge. The trial court found appellant was Mirandized before his original interrogation, there was no evidence the police deliberately employed a two-step interrogation process in order to circumvent the protections of *Miranda,* and curative measures were taken by the officers.[9] *See Carter,* 309 S.W.3d at 37–38.

We conclude appellant's objection was clear enough for the trial court to understand the *Seibert* objection because appellant raised the issue of voluntariness in his first suppression motion and objected at the hearing to the officers' purported "two-step interview" and the trial court's findings were directed toward the *Seibert* challenge. Accordingly, appellant preserved the issue for our review.

## II. No evidence that officers read appellant his *Miranda* warnings before appellant made off-camera incriminating statements

The State, as the proponent of the evidence of appellant's confession, bears the burden of establishing its admissibility. *See Martinez,* 272 S.W.3d at 623 (citing Tex. R. Evid. 104(a), *De la Paz v. State,* 273 S.W.3d 671, 680 (Tex.Crim.App.2008), and *Cofield v. State,* 891 S.W.2d 952, 954 (Tex.Crim.App.1994)). It is also the State's burden to establish a valid waiver of *Miranda* rights by a preponderance of the evidence. *See id.* at 619 n. 10; *see also Seibert,* 542 U.S. at 608 n. 1, 124 S.Ct. 2601 ("The prosecution bears the burden of proving, at least by a preponderance of the evidence, the *Miranda* waiver.").

**\*7** The trial court made the following findings relevant to this issue:

> • Detective Bolton credibly stated that he gave the defendant his legal warnings, and that the defendant waived his rights prior to giving the statements, all of which is reflected on the video.

> • Bolton credibly testified that his partner, Investigator Padilla, had interviewed the defendant prior to the formal statement and that Bolton had monitored the interview.

> • Bolton credibly testified that Padilla had given the defendant his legal warnings prior to questioning him.

> • [A]ny statements indicating that Padilla had not

given the defendant his legal warnings prior to questioning him are not credible.

> • [T]he defendant was not credible when he testified during the suppression hearing that the officers never read him his legal warnings when they first started talking to him.

> • [T]he defendant was Mirandized prior to his original interrogation.

We shall analyze these findings to determine whether they are supported by the record.

**Warnings by Bolton.** Bolton did not testify that he Mirandized appellant before appellant made off-camera incriminating statements. On the video, Bolton stated, "I'm going to read your rights to you like I did a little earlier." However, he did not testify or otherwise indicate on the video that he had done so before appellant confessed off-camera. In fact, he testified that appellant waived his *Miranda* rights "at the end," but he did not explain what he meant by that phrase. We conclude the trial court's finding that "Bolton credibly stated that he gave the defendant his legal warnings" is supported by the record. But the finding that "Bolton credibly stated that ... the defendant waived his rights ***prior to giving the statements,*** all of which is reflected on the video" is not supported by the record (emphasis added).

**Evans' and Padilla's Interview of Appellant.** Bolton testified that he ***did not*** monitor Evans' or Padilla's interview of appellant. As set forth above, the following exchange occurred upon defense counsel's cross-examination of Bolton:

> [Defense counsel:] ... [W]here was [appellant] located when you saw Evans and Padilla talking to him?

> [Bolton:] ... I was not present when ... Padilla talked to [appellant]. I was in an interview room talking to ... Martinez. I was conducting an interview there while ... Padilla was speaking to [appellant]. So, I was not present when he spoke to him, you know....

> [Defense counsel:] ... [Y]ou stayed in the little anteroom listening to somebody talking to [appellant] for a while. How long did you stay in there and listen to that?

> [Bolton:] ... I didn't watch that interview. While ... Padilla or ... Evans, either one, was interviewing [appellant] ... I was interviewing ... Martinez.

> [Defense counsel:] Okay. So what ... they said and what they did, you don't know other than what they told you he was saying.

> [Bolton:] Yes, sir....

6

Accordingly, the trial court's finding that "Bolton credibly testified that ... Padilla ... had interviewed the defendant prior to the formal statement and that Bolton had monitored the interview" is not supported by the record.

**\*8** Bolton had testified, however, as follows: "I was in the monitoring room. When [Evans and Padilla] entered the room, you know, they read [appellant]—and when they interviewed ... Martinez, they also read him his legal warnings." This testimony is unclear and inconsistent with Bolton's later testimony clarifying that he did not monitor appellant's interview.

The trial court is the sole factfinder at a suppression hearing and may believe or disbelieve some or all of a witness's testimony. *Amador v. State,* 275 S.W.3d 872, 878 (Tex.Crim.App.2009). However, the trial court's account of the evidence must be plausible in light of the record viewed in its entirety and must be reasonably supported by the evidence. *See id.* at 878–80 (concluding, after considering facts "taken as a whole" and reasonable inferences therefrom that the State carried its burden to show warrantless arrest was supported by probable cause); *see also Miller v. State,* 393 S.W.3d 255, 263 (Tex.Crim.App.2012) ("[A]ny trial-court findings inconsistent with ... conclusive evidence may be disregarded as unsupported by the record, even when that record is viewed in a light most favorable to the trial court's ruling."); *Carmouche v. State,* 10 S.W.3d 323, 332–33 (Tex.Crim.App.2000) (concluding trial court's finding that defendant voluntarily consented to search was not supported by record when "indisputable" video evidence contradicted essential portions of ranger's testimony).

Although Bolton initially stated that Evans and Padilla Mirandized appellant, Bolton clarified he was ***not present*** when Evans and Padilla interviewed appellant. Bolton further testified he was not present when appellant was arrested at 2:00 p.m. Bolton had been asked to assist in the interrogation around 5:15 p.m. and could "really just testify to anything that happened after 5:15." Bolton testified he interviewed another suspect and did not begin interviewing appellant until 10:00 or 10:30 p.m. Thus, he was not aware of what transpired with appellant from 2:00 p.m. until he started his interview at 10:00 or 10:30 p.m. Reviewing the entirety of Bolton's testimony, we conclude the trial court's findings that "Bolton credibly testified that Padilla had given the defendant his legal warnings prior to questioning him" and appellant "was Mirandized prior to his original interrogation" are not plausible or reasonably supported by the evidence.

**Appellant's Testimony.** With regard to the other two findings, that "any statements indicating that Padilla had not given the defendant his legal warnings prior to questioning him are not credible"[10] and appellant "was not credible when he testified during the suppression hearing

that the officers never read him his legal warnings when they first started talking to him," the trial court was allowed to disbelieve appellant's testimony on these points. *See Amador,* 275 S.W.3d at 878. However, the State was still required to meet its burden to show appellant received *Miranda* warnings before making the off-camera incriminating statements, which it failed to do. *See Martinez,* 272 S.W.3d at 619 n. 10.

We conclude the trial court's finding that appellant received his *Miranda* warnings before making incriminating statements is not supported by the record. To the contrary, the State failed to present evidence that appellant received such warnings. Therefore, we must address whether the State established that it did not employ a two-step interrogation technique in a deliberate way to undermine appellant's *Miranda* protections.

### III. No evidence that the two-step interrogation technique was not deliberately employed

**\*9** Courts should determine "whether the evidence shows that [the interrogating officer] deliberately employed a two-step 'question-first, warn later' interrogation technique to circumvent [the] appellant's *Miranda* protections." *Carter,* 309 S.W.3d at 38; *Ervin v. State,* 333 S.W.3d 187, 213 (Tex.App.—Houston [1st Dist.] 2010, pet. ref d). Because the "question of whether the interrogating officer deliberately withheld *Miranda* warnings will invariably turn on the credibility of the officer's testimony in light of the totality of the circumstances surrounding the interrogation," a factual finding regarding the officer's credibility is entitled to deference on appeal and is reviewed only for clear error.[11] *Carter,* 309 S.W.3d at 39; *Ervin,* 333 S.W.3d at 213.

The following findings by the trial court are relevant to this issue:

> • [T]he defendant was not credible when he claimed that he repeatedly told the officers that he did not want to talk to them.
>
> • Bolton credibly testified that the delay in taking a formal interview of the defendant was due to an effort to build rapport with the defendant.
> • [E]ven if the defendant had not been Mirandized prior to his original interrogation, there was no evidence that the police deliberately employed a two-step interrogation process in order to circumvent the protections of Miranda and [there was evidence] that the police did not deliberately employ such a two-step interrogation process. Rather, any delay in the administration of *Miranda* warnings was due to an effort to build rapport with the defendant than to intentionally circumvent the protections of *Miranda.*

We may set aside these findings only if they are clearly erroneous. *See Carter,* 309 S.W.3d at 39–41; *McCulley v.*

*State,* 352 S.W.3d 107, 118 (Tex.App.—Fort Worth 2011, pet. ref'd).

In *Martinez,* the Court of Criminal Appeals held that the State has the burden of proving that a two-step interrogation technique was not deliberately employed in light of the State's burden to show a confession is admissible. 272 S.W.3d at 623–24. No other Texas cases have addressed this issue directly.[12] In *Martinez,* police officers questioned the defendant about a robbery and murder before the defendant was given *Miranda* warnings. *Id.* at 618. Thereafter, a polygraph test was administered to the defendant, which took three to four hours. *Id.* The questions asked during the polygraph test were not in the record. *Id.* After the polygraph test, an officer informed the defendant that he had failed the test. *Id.* Appellant was then taken to municipal court, where a magistrate read him his *Miranda* warnings. *Id.* Upon his return to the police station, an officer again read appellant his *Miranda* warnings, and appellant was again questioned about the robbery and murder. *Id.* Appellant then gave incriminating statements on videotape. *Id.* The State argued appellant had the burden of producing an adequate record regarding what questions were asked during the polygraph test and any unwarned conversations. *Id.* at 623.

**\*10** The Court of Criminal Appeals noted,

> When the officers initially questioned [the defendant] at the police station without giving him *Miranda* warnings, they violated [the defendant's] constitutional rights. At the suppression hearing, the state failed to provide the polygrapher's name, the questions used during the polygraph examination, or the content of the initial interrogation of [the defendant], all of which are under the exclusive control of the state.

*Id.* at 623–24.

In holding that appellant's videotaped statement was inadmissible, the court further noted,

> Here, [the defendant] was in custody for the purposes *of Miranda;* he gave both statements to law-enforcement officials after his formal arrest pursuant to an arrest warrant, and both statements were given at a police station. This indicates that the absence of *Miranda* warnings at the beginning of the interrogation process was not a mistake based on the interrogating officers' mistaken belief that [the defendant] was not in custody, but rather a conscious choice.

*Id.* at 624.

In his concurrence, Judge Price stated, "I do not know whether [the State's] burden should extend to disproving circumstances that precede the *Miranda* warnings that might suffice, in contemplation of *Seibert,* to call the efficacy of those warnings into doubt." *Id.* at 628 (Price, J., concurring). But he noted without regard to which party carried the burden, the defendant "prove[d] circumstances that would impugn the efficacy of otherwise valid *Miranda* warnings." *Id.* Despite these statements and other statements that appear to conflict with the analysis in the opinion authored by Judge Johnson, Judge Price joined Judge Johnson's opinion, making it a five-judge majority opinion of the court. *See id.* at 617 (noting that Judge Price joins Judge Johnson's opinion); *Id.* at 630 (Price, J., concurring) (stating that Judge Price joins Judge Johnson's opinion).

Justice Hervey dissented, and three justices joined her dissent. She stated she would require the defendant to present a sufficient record showing a police officer deliberately employed the two-step questioning tactic. *Id.* at 631 (Hervey, J., dissenting). She cited cases that stand for the proposition that it is the defendant's burden to prove his statements were the result of custodial interrogation and then the burden shifts to the State to defeat the defendant's claim. *Id.* at 643. Here, it is undisputed that appellant was in custody when he made his statements. He had been arrested pursuant to a valid arrest warrant.

As in *Martinez,* the record in this case also is incomplete.[13] Neither Evans nor Padilla testified. There is no evidence of what transpired before Bolton began his interrogation at 10 or 10:30 p.m. Appellant confessed, and the officer "came out of the video room ... and told [the other officers] that [appellant] had confessed" and "we need to get it on video." A few minutes later, at "about midnight," Bolton reentered the interrogation room, started the recording, and read appellant his *Miranda* warnings. Although Bolton stated on the video that he read appellant his *Miranda* warnings "a little earlier," no evidence shows when this occurred and thus whether it occurred before appellant made any incriminating statements off-camera. On the video, appellant repeats earlier unrecorded statements, which are not in the record, but Bolton refers to them numerous times during the video recording.[14]

**\*11** The State presented no evidence that the two-step interrogation was not deliberately employed to undermine the *Miranda* warnings. The trial court's finding that "there was no evidence that the police deliberately

8

employed a two-step interrogation process in order to circumvent the protections of Miranda" is not relevant because it shifts the burden to the appellant to prove the two-step interrogation was deliberately employed, when the State was required to show that it was not. *See id.* at 623–24.

Although appellant presented some evidence that the interrogation technique was deliberately employed to undermine the *Miranda* warnings, the trial court was entitled to discredit appellant's testimony. *See Amador,* 275 S.W.3d at 878. However, the State had the burden to present evidence that its interrogation technique was not deliberately employed to undermine the *Miranda* warnings. *See Martinez,* 272 S.W.3d at 623–24. As in *Martinez,* appellant was in custody for *Miranda* purposes when he was being interrogated. He gave both statements to law-enforcement officers after he had been arrested pursuant to a valid arrest warrant. Both statements were given at a police station. As set forth above, the State did not show that officers read appellant his *Miranda* warnings before the first confession was obtained. This indicates that the absence *of Miranda* warnings before the beginning of the interrogation process was not a mistake but rather a conscious choice. *Id.* at 624.

The trial court found, however, that "the police did not deliberately employ [an illegal] two-step interrogation process. Rather, any delay in the administration of *Miranda* warnings was due to an effort to build rapport with the defendant rather than to intentionally circumvent the protections of *Miranda.*" The record indicates, to the contrary, that Bolton testified he did not **record** the entire interview of appellant because he wanted "to build rapport." He did not testify that he or the other officers **delayed administering Miranda *warnings*** to build rapport.[15]

The State cites two cases from jurisdictions outside of Texas in support of its argument that a delay in administering *Miranda* warnings to build rapport is not a deliberate attempt to circumvent *Miranda* protections. The first case, an unpublished opinion, is distinguishable because the officer there testified that during the course of the conversation he realized he had forgotten to Mirandize the suspect: "The conversation began ... a rapport was built, and it wasn't until some facts started to come out that I realized I had forgotten to *Miranda.* That's why I stopped the interview then, made the *Miranda* advisement, and made sure he waived before we continued." *People v. Delatorre,* No. B230591, 2012 WL 909659, at *2 (Cal.Ct.App. Mar. 19, 2012). Forgetfulness is not deliberateness. *See Carter,* 309 S.W.3d at 39 (articulating standard as "whether interrogating officer deliberately withheld *Miranda* warnings"). Moreover, the court of appeals in *Delatorre* held that the defendant had waived his complaint that "his admissions had been tainted by the delayed *Miranda* warning" because at trial, the defendant only asked the trial court to exclude his

prewaiver statements. *Id.* at *4. Thus, the *Delatorre* court did not need to address whether the police officer's delay in administering the *Miranda* warnings was deliberate. As set forth above, appellant did not waive that issue in this case.

**\*12** The second case also is distinguishable. The court held that officers' prewaiver "initial background interview" of a suspect for 20 minutes was not a deliberate attempt to undermine *Miranda. State v. Hughes,* 272 S.W.3d 246, 248, 254 (Mo.Ct.App.2008). During that 20–minute conversation, officers asked the suspect various questions about his background, relationships with family members, and why he had come to the city where the crime was committed. *Id.* at 248. Importantly, before appellant confessed, officers read his *Miranda* rights to him and he signed a *Miranda* waiver form. *Id.* The officer who testified at trial identified two reasons beyond collection of background information justifying the prewaiver discussion: "(1) to determine whether the subject is under the influence of drugs or alcohol to an extent that would prevent the subject from meaningfully participating in an interrogation; and (2) to assess the subject's level of intellectual functioning, facility with the English language, and ability to read." *Id.* at 254.

In concluding that "the officers had no intent to violate *Miranda* by conducting their interrogation in the manner they chose," the court noted:

> We are not blind to the fact that an evident purpose of the officers' prewaiver questioning of [the suspect] (beyond acquiring background information, and gauging his intellectual capacity, literacy, and lucidity) was to build a rapport to facilitate [the] further interrogation. The officers did so by engaging [the suspect] in a discussion of various non-threatening subjects.... However, nothing in that pre-waiver discussion undermined, misrepresented, or otherwise rendered ineffective the *Miranda* warning [the suspect] was ultimately given, or the waiver he ultimately executed (nor did the officers intend to achieve this effect, according to the trial court's findings).

*Id.* at 255. The clear implication from this statement is that while a prewaiver attempt to build rapport by discussing subjects unrelated to the crime is permissible, taking steps during a prewaiver discussion to "undermine [ ], misrepresent[ ], or otherwise render[ ] ineffective the

9

*Miranda* warning" would be a violation of *Seibert. See id.*

In this case, unlike the facts in *Hughes,* appellant was in custody for approximately eight hours before Bolton began questioning him and had previously been questioned by Evans and Padilla for an indeterminate amount of time. The record is silent regarding what subjects were discussed as well as to whether appellant received his *Miranda* warnings during that timeframe. Moreover, as set forth above, Bolton did not testify that the administration of *Miranda* warnings was delayed to build rapport. He merely testified that **the recording** was delayed for that purpose.

The State has not cited any cases holding that an officer's intentional withholding *of Miranda* warnings to build rapport is not a deliberate attempt to circumvent *Miranda* protections, nor have we found any. *See Martinez,* 272 S.W.3d at 624–25 (holding State failed to meet burden to show withholding *Miranda* warnings was not deliberate when, among other things, interrogation process at police station was lengthy and appellant did not receive *Miranda* warnings until seven hours after the initial interrogation). We conclude that the trial court's finding that the police did not deliberately employ an illegal two-step interrogation process because any delay was due to an effort to build rapport is not supported by the record. No testimony was elicited to this effect. There is no evidence that the officers did not make a conscious choice to withhold *Miranda* warnings. *See Martinez,* 272 S.W.3d at 624. Accordingly, the State failed to meet its burden to show that its interrogation technique was not deliberately employed to undermine *Miranda* protections. *See id.* at 623–24.

### IV. No Evidence of Curative Measures
As set forth above, absent curative measures, the post-warning statements must be excluded. *Seibert,* 542 U.S. at 622, 124 S.Ct. 2601 (Kennedy, J., concurring); *Carter,* 309 S.W.3d at 37. "Curative measures should be designed to ensure that a reasonable person in the suspect's situation would understand the import and effect of the *Miranda* warning and of the *Miranda* waiver." *Martinez,* 272 S.W.3d at 621; *see also Ervin,* 333 S.W.3d at 212–13. Curative measures allow the accused to distinguish the two contexts and appreciate that the interrogation has taken a new turn. *Martinez,* 272 S.W.3d at 621; *Ervin,* 333 S.W.3d at 213. Examples of appropriate curative measures include (1) a substantial break in time and circumstances between the unwarned statement and the *Miranda* warning; (2) explaining to the defendant that the unwarned statements, taken while in custody, are likely inadmissible; (3) informing the suspect that, although he previously gave incriminating information, he is not obligated to repeat it; (4) interrogating officers refraining from referring to the unwarned statement unless the defendant refers to it first; or (5) if the defendant does

refer to the pre-*Miranda* statement, the interrogating officer stating that the defendant is not obligated to discuss the content of the first statement. *Martinez,* 272 S.W.3d at 626–27 (referring to examples in *Seibert* plurality and concurrence).

**\*13** The trial court made the following findings relevant to this issue:

> [C]urative measures were taken before the second confession by the following procedures: (1) there was minimal reference to the original interrogation in the defendant's recorded statement, (2) different officers conducted the two interviews, (3) a substantial amount of time elapsed between the original interrogation at 5:15 p.m. and the formal recorded statement after midnight, and (4) *Miranda* warnings were again given and waived prior to the second statement, which was recorded.

Only the first two findings arguably could be considered curative measures, but neither is supported by the record. As set forth above, Bolton referred to the original confession numerous times during the recorded interview. Bolton began the video interrogation by stating, "Tell me what we talked about earlier." Bolton also stated: "Earlier you said you were out drinking with a friend. Tell me what happened." "Earlier you said the passenger door was open." "Earlier you said you ran down the street." The video interview does not reflect that appellant referred to the unrecorded statement first, and Bolton did not refrain from referring to the statement. *See Carmouche,* 10 S.W.3d at 332–33 (concluding trial court's finding was clearly erroneous when "indisputable" video evidence contradicted finding).

In any event, the proper inquiry is whether Bolton refrained from referring to the earlier statement or whether appellant referred to it first—neither occurred here. When an officer refers to the first interrogation in the second interrogation, as here, it is evidence that a continuity exists between the two interrogations. *See Martinez,* 272 S.W.3d at 625–26. To avoid a *Miranda* violation in such a circumstance, an officer may inform the defendant that any prior unMirandized statements made during a previous interrogation could not be used against him. *See id.* at 626. Here, Bolton repeatedly referred to appellant's previous statement on the video and thus treated that interrogation as a continuation of the first. *See id.* at 625–26. On the video, Bolton did not inform appellant that any unMirandized statements could not be used against him. Accordingly, the trial court's finding that Bolton's reference to the unrecorded statement was minimal and thus a curative measure is not

supported by the record.

Moreover, it is undisputed that Bolton elicited the original, unrecorded confession from appellant and then recorded the statement. Thus, the trial court's finding that different officers conducted the two interviews as a curative measure is not supported by the record.

The third finding—that "a substantial amount of time elapsed between the original interrogation ... and the formal recorded statement" is not a curative measure. A curative measure would be a substantial break in time and circumstances between the unwarned statement and the *Miranda* warning. *See id.* at 626. When the presence of police personnel with the defendant is virtually uninterrupted, there is no substantial break in time and circumstances between the prewarning statement and the *Miranda* warning. *See id.* at 625. Appellant had been interviewed by Evans and Padilla for an indeterminate time period before Bolton began his interview. The only evidence of a break in time of police presence with appellant was Bolton's testimony that "after [appellant] confessed," Bolton "used the restroom and then a few minutes later ... came back into the room" and took the recorded statement. That is not evidence that a substantial amount of time elapsed between the first and the second interrogations. Thus, the trial court's finding is not supported by the record.

**\*14** The final relevant finding—that *Miranda* warnings were given and waived prior to the second statement[16]—likewise is not a curative measure. In fact, that is the pattern of an improper "question first, warn later" interrogation technique when the prior statement was unwarned. *See Seibert,* 542 U.S. at 604–05, 124 S.Ct. 2601. This finding is not relevant.

No evidence was presented that curative measures were taken in this case. Thus, we conclude on this record the State did not meet its burden to present evidence that the officers did not employ a two-step interrogation technique in a deliberate, calculated way to undermine appellant's *Miranda* warnings or that the officers took curative measures to alleviate the purported failure to give such warnings before the original confession was obtained. Accordingly, the trial court's findings that the officers did not employ a two-step interrogation technique in a deliberate, calculated way to undermine appellant's *Miranda* warnings and that officers took curative measures are not supported by the record and are clearly erroneous. The trial court erred in admitting appellant's videotaped statement.

## V. Admission of Statement Harmful

We must determine whether admitting appellant's videotaped statement was harmful error requiring reversal. *See* Tex. R. App. P. 44.2(a). The admission of

incriminating statements made during a custodial interrogation where no proper *Miranda* warnings were given constitutes constitutional error, and this court must reverse unless we determine beyond a reasonable doubt that the error did not contribute to appellant's conviction. *See id.; Akins v. State,* 202 S.W.3d 879, 891–92 (Tex.App.— Fort Worth 2006, pet. ref d.). In analyzing whether the constitutionally erroneous admission of a defendant's statement was harmless, we review whether the admission of appellant's statement contributed to the jury's verdict of guilty in this cause, regardless of whether there is evidence independent of the statement that is otherwise sufficient to sustain the jury's verdict of guilt. *McCarthy v. State,* 65 S.W.3d 47, 55 (Tex.Crim.App.2001). If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error is not harmless beyond a reasonable doubt. *Id.*

A defendant's statement, especially a statement implicating him in the commission of the charged offense, is unlike any other evidence that can be admitted against the defendant. *Id.* at 55–56. The presence of other overwhelming evidence that was properly admitted which supports the material fact to which the inadmissible evidence was directed may be an important factor in the evaluation of harm. *Wall v. State,* 184 S.W.3d 730, 746 (Tex.Crim.App.2006). However, a confession is likely to leave an indelible impact on a jury. *McCarthy,* 65 S.W.3d at 56.

> If the jury believes that a defendant has admitted the crime, it will doubtless be tempted to rest its decision on that evidence alone, without careful consideration of the other evidence in the case. Apart, perhaps, from a videotape of the crime, one would have difficulty finding evidence more damaging to a criminal defendant's plea of innocence.

**\*15** *Id.* (quoting *Arizona v. Fulminante,* 499 U.S. 279, 313, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (Kennedy, J., concurring)).

Here, appellant confessed to shooting the two complainants execution-style as they sat in a car and to stealing the complainants' marijuana and cars. He also confessed that he threw the gun he used in the commission of the offenses into a bayou. The State presented evidence that corroborated the confession. A neighbor heard gun shots, left his house, and saw the two bodies and a man stumbling toward the bayou. A witness testified that he walked into a house after the shooting. The witness testified that a group of people, including appellant, was in the house, and the people were celebrating. The witness testified, "*They* said that they had

11

shot somebody." He said "*they* showed him a bag of marijuana. He could not remember who showed him the bag, but he "guess [ed]" it was appellant. However, he said appellant "was not really the one that was speaking that much." He said "they" told him "they" had a gun "that they threw away." He also said appellant's accomplice Martinez did most of the talking.

Another witness had gone to the house with the first witness to obtain marijuana. That witness said appellant and Martinez were there with a group of people. Appellant and Martinez were "jumpy." The second witness testified that appellant said "[t]hey killed two people because of a bag of weed." Appellant also purportedly said that "[t]hey had [the complainants'] car in their garage." Defense counsel elicited testimony from the second witness that in his earlier statement to police, he said Martinez did the talking, not appellant. No evidence was presented that appellant was the shooter other than appellant's videotaped confession. Although some evidence of appellant's guilt corroborates his confession, we cannot say there is no reasonable likelihood that the State's use of appellant's statement materially affected the jury's deliberations. *See id.*

We sustain appellant's sole issue. We reverse the judgment of the trial court and remand for a new trial.[17] *See* Tex. R. App. P. 43.2(d); *McCarthy,* 65 S.W.3d at 56.

(Frost, C.J., dissenting)

### DISSENTING OPINION

Kem Thompson Frost, Chief Justice, dissenting.
**\*16** Under precedent from the Court of Criminal Appeals, when a defendant moves to suppress a statement made after receiving *Miranda* warnings because the statement was made as part of an alleged "question first, warn later" interrogation technique used by the police to circumvent the defendant's *Miranda* protections, the State has the burden of proving that the police did not deliberately employ such a technique. But, under preservation-of-error principles, the State does not have this burden of proof unless the defendant timely presents to the trial court a complaint that the police deliberately employed a "question first, warn later" interrogation technique. In the case under review, the first time appellant arguably raised this complaint was during closing argument at the suppression hearing after the State had presented its evidence and rested. Because appellant did not timely raise this complaint, it does not provide a basis for reversing the trial court's judgment.

***The State's burden of proof regarding an alleged "question first, warn later" interrogation technique***
As noted in the majority opinion, in *Martinez v. State,* the Court of Criminal Appeals held that the State has the burden of proving that the police did not deliberately employ an alleged "question first, warn later" interrogation technique to circumvent the defendant's *Miranda* protections.[1] Four dissenting judges thought that the burden should be on the defendant to present a sufficient record showing that the police did not deliberately employ an alleged "question first, warn later" interrogation technique.[2] One concurring judge stated that he had not decided whether the State had the burden found by the majority but that the court did not need to address this issue to resolve the case.[3] Though this statement indicated that only four judges on the high court concluded that the State had the burden of proof, the concurring judge joined the court's opinion, in which the court held that the State has the burden of proving that the police did not deliberately employ an alleged "question first, warn later" interrogation technique.[4] Therefore, the conclusion that the State has the burden of proof was contained in an opinion joined by five judges, and thus constitutes a binding precedent of the Court of Criminal Appeals.[5]

***The requirement that appellant timely present to the trial court a complaint that the police deliberately employed a "question first, warn later" interrogation technique***
To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired.[6] The appellate complaint must comport with a specific complaint that appellant timely lodged at trial.[7] A complaint in which the party states one legal theory may not be used to support a different legal theory on appeal.[8] Even constitutional errors may be waived by failure to timely complain in the trial court.[9]

It violates "ordinary notions of procedural default" for an appellate court to reverse a trial court's decision on a legal theory not timely presented to the trial court by the complaining party.[10] Texas Rule of Appellate Procedure 33.1 encompasses the concept of "party responsibility," meaning that appellant, as the complaining party, had the responsibility to clearly convey to the trial court the particular complaint that he now raises on appeal, including "the precise and proper application of the law as well as the underlying rationale."[11] To avoid forfeiting an appellate complaint, the complaining party must "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it.' "[12] This requirement allows the trial court or the opposing party the opportunity to remove the basis for the objection or to correct the alleged error.[13] A trial court's decision will not

be reversed on a theory upon which the non-appealing party did not have an opportunity to develop a complete factual record.[14]

**\*17** Under the *Martinez* precedent, when a defendant moves to suppress a statement made after receiving *Miranda* warnings because the statement was made as part of an alleged "question first, warn later" interrogation technique used by the police to circumvent the defendant's *Miranda* protections, the State has the burden of proving that the police did not deliberately employ such a technique.[15] But, under preservation-of-error principles, this burden does not arise unless the defendant first timely presents to the trial court a complaint that the police deliberately employed a "question first, warn later" interrogation technique.[16]

### *Appellant's failure to timely present to the trial court a complaint that the police deliberately employed a "question first, warn later" interrogation technique*

On remand, the State asserts for the first time that appellant failed to preserve error in the trial court. In neither of his written motions to suppress did appellant complain that the police deliberately employed a "question first, warn later" interrogation technique. After the close of the evidence at the suppression hearing and during closing argument at that hearing, appellant's primary argument was that the videotaped confession should be suppressed because all of the voices on the recording were not identified. At the end of his closing argument, appellant made the following additional argument:

> And my next approach ... is I'm contending this is a two-step interview.... And once they got him to say what they wanted him to say, they took him in and videoed him and gave his Miranda warning and he told the story again. And I'm suggesting under the existing case law, that's illegal and the statement should be suppressed.

Presuming for the sake of argument that these statements clearly conveyed to the trial court the particular complaint that appellant now raises on appeal and that appellant's counsel's words, as quoted above, were sufficient to voice this complaint, the objection was not timely because it was asserted for the first time at the end of closing argument after the close of the evidence at the hearing.[17] Lodging the complaint at this time did not allow the trial court or the State the opportunity to remove the basis for the objection or to correct the alleged error.[18] This failure to timely raise the complaint denied the State an opportunity to develop a complete record and to prove that the police did not deliberately employ a "question

first, warn later" interrogation technique.[19] Immediately after appellant made these statements during closing argument, the trial court ruled on appellant's motion to suppress, granting it in part and denying it in part.

In ruling on this motion, the trial court did not indicate any awareness that it was ruling on a complaint based on the alleged use of a "question first, warn later" interrogation technique. The majority relies in part on the trial court's findings of fact regarding such a technique, made long after the trial of this case under an abatement order of this court, as instructed by the Court of Criminal Appeals.[20] Because these findings were made at the instance of the Court of Criminal Appeals, they do not indicate that the trial court intended, when it ruled on the motion to suppress, to rule on a complaint based on an alleged use of a "question first, warn later" interrogation technique.[21] Even presuming the trial court was aware of such a complaint, it is apparent from the record the State did not have a reasonable opportunity to present evidence in response to this complaint because the complaint came after the close of the evidence at the suppression hearing. The untimeliness of the complaint is fatal to error preservation.

**\*18** The State did not raise its preservation-of-error argument in its original briefing in this court. Nor did this court address preservation of error in its opinion on original submission. Nonetheless, lack of error preservation may be raised on remand from the Court of Criminal Appeals, even though the high court did not address preservation of error in its opinion.[22] If the complaint was not preserved for appellate review, it is waived.[23]

Because appellant did not timely raise the "question first, warn later" complaint, he failed to preserve error in the trial court, and this court may not reverse the trial court's judgment based on this complaint.[24] Accordingly, this court should overrule appellant's sole issue and affirm the trial court's judgment. Because the court does not do so, I respectfully dissent.

13

Footnotes

1    *Vasquez v. State,* 411 S.W.3d 918, 919–20 (Tex.Crim.App.2013). When a question is raised as to the voluntariness of a statement of an accused, article 38.22 of the Code of Criminal Procedure requires a trial court to enter "an order stating its conclusion as to whether or not the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based." Tex.Crim. Proc.Code art. 38.22 § 6.

2    The relevant facts concerning the crime are discussed below.

3    *Miranda v. Arizona,* 384 U.S. 436, 478–79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (prohibiting use of oral statement of accused made as result of custodial interrogation unless certain warnings are given and accused knowingly, intelligently, and voluntarily waives rights).

4    Texas Code of Criminal Procedure article 38.22, section 3 restricts the admissibility in a criminal proceeding of statements made during custodial interrogation to statements that are recorded and obtained after the accused has been given a statutory warning akin to the *Miranda* warnings and "knowingly, intelligently, and voluntarily waives any rights set out in the warning."

5    The trial court did not expressly make any conclusions of law, although some of the trial court's findings are conclusions of law.

6    The classic example of this technique occurs when "the suspect's first, unwarned interrogation [leaves] 'little, if anything, of incriminating potential left unsaid,' making it 'unnatural' not to 'repeat at the second stage what had been said before.' " *Bobby v. Dixon,* ——U.S. ——, 132 S.Ct. 26, 31, 181 L.Ed.2d 328 (2011) (citing *Seibert,* 542 U.S. at 616–17, 124 S.Ct. 2601)).

7    We note that the Court of Criminal Appeals has twice addressed in unprecedential, unpublished opinions whether raising the issue of voluntariness preserves the issue of whether a two-step interrogation technique was used in a deliberate, calculated way to undermine *Miranda* protections. *See Hunt v. State,* No. PD–0152–12, 2013 WL 3282973, at *4–5 (Tex.Crim.App. June 26, 2013) (not designated for publication) (holding raising the issue of voluntariness in the context of midstream warnings preserved complaint when, among other things, trial court found "second confession [was] not so tainted as to make it inadmissible" and thus trial court "clearly" had notice of appellant's *Seibert* complaint); *Batiste v. State,* No. AP–76,600, 2013 WL 2424134, at *16 (Tex.Crim.App. June 5, 2013) (not designated for publication) (holding that objection to "voluntariness" of defendant's statement did not preserve error as to two-step interview when appellant did not reference *Seibert, Carter,* "two-step questioning," "question first, warn later" or any other issues that might raise an issue under *Seibert* and the trial court's findings of fact and conclusions of law were directed only to general voluntariness). The facts of this case are closer to *Hunt* because appellant raised the issue of voluntariness in his first suppression motion and, as discussed below, objected to the officers' purported "two-step interview" at the hearing and the trial court's findings are directed toward the *Seibert* challenge.

8    We find the State's complaint that this objection was not raised until "closing argument at the suppression hearing" to be inconsequential. At that point in the hearing, the State could have requested to put on more evidence regarding this issue, but it did not do so.

9    We acknowledge that the trial court rendered its findings on remand; however, it made no finding that it had not been aware of appellant's *Seibert* challenge at the time of the suppression hearing.

10    The only evidence of this was presented through appellant's testimony.

11    When the two-step questioning tactic is not deliberately employed, "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." *See Oregon v. Elstad,* 470 U.S. 298, 318, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985); *see also Carter,* 309 S.W.3d at 36; *Ervin,* 333 S.W.3d at 213. In this situation, when the first statement is unwarned but not coerced, "the admissibility of any subsequent statement should turn ... solely on whether it is knowingly and voluntarily made." *Elstad,* 470 U.S. at 309, 105 S.Ct. 1285; *see also Carter,* 309 S.W.3d at 32; *Ervin,* 333 S.W.3d at 213. "Unless a deliberate two-step strategy is employed, *Elstad* applies." *Carter,* 309 S.W.3d at 37; *see also Ervin,* 333 S.W.3d at 213.

12    Other Texas courts of appeals have noted that the burden of showing admissibility is on the State. *See, e.g.*, *Ervin,* 333 S.W.3d at 235–36. Other jurisdictions have imposed this burden on the government as consistent with the government's burden to prove admissibility of a confession before it may come into evidence. *See, e.g.*, *U.S. v. Capers,* 627 F.3d 470, 479 (2d Cir.2010); *U.S. v. Stewart,* 536 F.3d 714, 719 (7th Cir.2008); *U.S. v. Ollie,* 442 F.3d 1135, 1142–43 (8th Cir.2006); *Ross v. State,* 45 So.3d 403, 427 (Fla.2010).

13 The *Martinez* court held that an incomplete record does not preclude an appellate court from analyzing whether a two-step questioning tactic was deliberately employed because it is the State's burden to show the confession is admissible. *See Martinez,* 272 S.W.3d at 623.

14 For example, after administering *Miranda* warnings, Bolton began the video interrogation by stating, "Tell me what we talked about earlier."

15 Defense counsel asked Bolton, "And if it comes to a point **whether the Miranda warnings were read or not,** y'all talked to him for almost eight hours and then all the [sic] sudden decide to start audio. Why don't you audio the whole thing?" (Emphasis added.)
  Bolton responded, "[W]e just don't do it. And it's just a decision that we made that— sometimes it's like hours, you know, just to get—to build rapport with the individual. You know, we talk to them about a number of things, about family."

16 We note that the trial court found the warnings were "again" given. For the reasons set forth above, we conclude the State did not present evidence of when the original warnings were given and thus whether it was before Bolton elicited the first confession.

17 A motion to suppress is a specialized objection to the admissibility of evidence. *Black v. State,* 362 S.W.3d 626, 633 (Tex.Crim.App.2012). When an appellate court concludes that certain evidence is inadmissible, this is generally the law of the case. *See Howlett v. State,* 994 S.W.2d 663, 666 (Tex.Crim.App.1999) ("[A]n appellate court's resolution of a question of law in a previous appeal of the same case will govern the disposition of the same issue when raised in a subsequent appeal."). The law of the case doctrine may apply to a motion to suppress. *See, e.g., Satterwhite v. State,* 858 S.W.2d 412, 430 (Tex.Crim.App.1993) (applying law of the case because none of the facts surrounding search had changed); *Ware v. State,* 736 S.W.2d 700, 701 (Tex.Crim.App.1987) (applying law of the case when the facts and legal issues were "virtually identical"). However, though we have concluded that the State did not meet its burden of proof on this record, nothing prevents the State from offering additional evidence in support of the admissibility of the confession on remand. *See Black,* 362 S.W.3d at 633–34; *Montalvo v. State,* 846 S.W.2d 133, 136 (Tex.App—Austin 1993, no pet.).

1 *Martinez v. State,* 272 S.W.3d 615, 623–24 (Tex.Crim.App.2008).

2 *Id.* at 631 (Hervey, J., dissenting, joined by Keller, P.J., Meyers, and Keasler, JJ.).

3 *Id.* at 627–29 (Price, J., concurring).

4 *See id.* at 623–24 (Johnson, J., joined by Price, Womack, Holcomb, and Cochran); *id.* at 629 (Price, J., concurring).

5 *See Reynolds v. State,* 4 S.W.3d 13, 15–16 (Tex.Crim.App.1999).

6 *See* Tex. R. App. P. 33.1(a).

7 *See Wilson v. State,* 71 S.W.3d 346, 349 (Tex.Crim.App.2002).

8 *See Broxton v. State,* 909 S.W.2d 912, 918 (Tex.Crim.App.1995).

9 *See id.*

10 *See Hailey v. State,* 87 S.W.3d 118, 122 (Tex.Crim.App.2002).

11 *See Pena v. State,* 285 S.W.3d 459, 463–64 (Tex.Crim.App.2009).

12 *Id.* at 464 (quoting *Lankston v. State,* 827 S.W.2d 907, 909 (Tex.Crim.App.1992).

13 *Id.* at 464.

2

*See Pena,* 285 S.W.3d at 463–64; *Hailey,* 87 S.W.3d at 122.

*See Martinez,* 272 S.W.3d at 623–24.

*See Pena,* 285 S.W.3d at 463–64; *Hailey,* 87 S.W.3d at 122. *See also United States v. Ollie,* 442 F.3d 1135, 1142–43 (8th Cir.2006) (stating that "when a defendant moves to suppress a post-warning statement *that he contends was given as part of a question-first interrogation,* the prosecution must prove, by a preponderance of the evidence, that the officer's failure to provide warnings at the outset of questioning was not part of a deliberate attempt to circumvent *Miranda* ").

*See Pena* at 464,.

*See id.*

*See id.*

*See Vasquez v. State,* 411 S.W.3d 918, 920 (Tex.Crim.App.2013).

The majority also relies upon the failure of the trial court to make a finding that it was unaware of a *Seibert* challenge by appellant at the time of the suppression hearing. But, the trial court was not instructed in this court's abatement order to make any findings regarding preservation of error or regarding its awareness of a *Seibert* challenge at the time of the suppression hearing.

*See, e.g., Pena v. State,* 285 S.W.3d 459, 464 (Tex.Crim.App.2009) (holding that appellant failed to preserve error in the trial court as to an appellate complaint, even though the Court of Criminal Appeals previously had vacated the court of appeals's judgment and remanded to the intermediate court based on a procedural issue regarding the same appellate complaint, without addressing preservation of error).

*See id.* at 463–64.

*See Pena,* 285 S.W.3d at 463–64; *Hailey,* 87 S.W.3d at 122.

*Appendix B*

*State v. Vasquez,*
*No. 1333231 in the 228th District Court of Harris County, Texas*

*Findings of Fact on Defendant's Motion to Suppress*
*March 7, 2014*

P.8

Cause No. 1333231

| THE STATE OF TEXAS | § | IN THE 228th DISTRICT COURT |
|---|---|---|
| VS. | § | OF |
| JOSE VASQUEZ | § | HARRIS COUNTY, TEXAS |

**FINDINGS OF FACT ON DEFENDANT'S MOTION TO SUPPRESS**

The Court, having considered the official court documents and evidence as well as the Court's personal recollection as the presiding judge over the trial of this case, makes the following findings of fact:

**Procedural History**

1. The defendant was charged with the capital murder of Suu Nguyen and Aleksander Lobos committed on April 1, 2010 (CR – 2). He pled "not guilty" to the charge, and the case was tried to a jury (CR – 159). The jury found the defendant guilty, and the Court assessed punishment at life in prison (CR – 159).

2. The defendant appealed, and the court of appeals reversed the conviction in a published opinion, finding that the defendant's statement was the result of a deliberate two-step interrogation and that he was harmed by the admission of that statement. *Vasquez v. State*,

397 S.W.3d 850 (Tex. App.—Houston [14th Dist.] March 28, 2013, pet. granted).

3. The State filed a petition for discretionary review, which the Court of Criminal Appeals granted. The Court of Criminal Appeals then vacated the opinion of the court of appeals and remanded the case to this Court to make findings of fact consistent with *Carter v. State*, 309 S.W.3d 31 (Tex. Crim. App. 2010). Specifically, the Court of Criminal Appeals requested the following findings: (1) whether the original, unrecorded interview was custodial in nature, (2) whether the defendant was Mirandized prior to his original interrogation, (3) if not, whether the police deliberately employed a two-step interrogation process, and (4) if they did, were any curative measures taken before the second confession. *Vasquez v. State*, No. PD-0497-13, 2013 WL 5729828, *2 (Tex. Crim. App. Oct 23, 2013).

**Factual Background**

4. The Court finds, based upon the reporter's record in this case and based upon this Court's evaluation of the witnesses' testimony and credibility, that the defendant pulled out his revolver during a drug transaction, pushed open the victim's car door, and shot both Suu Nguyen and Aleksander Lobos (St. Ex. 150) (RR. V – 52).

2

20

Furthermore, shortly after the shooting, the defendant told some acquaintances that he had shot and killed two people for a bag of weed (RR. III – 205, 214, 268) (RR. IV – 34-35). The defendant was holding a bag of marijuana, and he showed it to one of his acquaintances during the post-murder meeting (RR. III – 211, 223, 269).

5. The Court finds, based upon the reporter's record in this case and based upon this Court's evaluation of the witnesses' testimony and credibility, that more than two weeks after the murders, the police tracked the defendant to an apartment complex on South Post Oak (RR. IV – 65, 81). As the officers entered the apartment, a neighbor yelled that some guys were jumping off of the second-story balcony at the back of the apartment (RR. IV – 70). The suspects, including the defendant, started running down Post Oak, but the police chased them to a nearby gas station where the defendant was finally detained (RR. IV – 70-71).

6. The Court finds, based upon the reporter's record in this case and based upon this Court's evaluation of the witnesses' testimony and credibility, that the defendant gave a videotaped statement to homicide

3

detective Richard Bolton in which he admitted to shooting both of the victims (St. Ex. 150).

**Motion to Suppress**

7. The Court finds, based upon the reporter's record in this case and based upon this Court's evaluation of the witnesses' testimony and credibility, that the defendant filed a written pre-trial motion to suppress his confession, claiming that his statement was taken without a proper warning of his constitutional and statutory rights and that he was illegally arrested (CR – 54-55). The motion did not allege that the defendant's statement was the result of a deliberate two-step interrogation process (CR – 54-55).

8. The Court finds, based upon the reporter's record in this case and based upon this Court's evaluation of the witnesses' testimony and credibility, that the Court carried the motion with the trial; when Detective Bolton was called to testify, the Court held a hearing outside the presence of the jury at which the defendant and Bolton were the only witnesses (RR. IV – 79, 95).

9. The Court finds, based upon the reporter's record in this case and based upon this Court's evaluation of the witnesses' testimony and

4

22

8

credibility, that Detective Bolton credibly stated that he gave the defendant his legal warnings, and that the defendant waived his rights prior to giving the statement, all of which is reflected on the video (RR. IV – 81-82) (St. Ex. 150).

10. The Court finds, based upon the reporter's record in this case and based upon this Court's evaluation of the witnesses' testimony and credibility, that Bolton credibly testified that his partner, Investigator Padilla, had interviewed the defendant prior to the formal statement and that Bolton had monitored the interview (RR. IV – 87).

11. The Court finds, based upon the reporter's record in this case and based upon this Court's evaluation of the witnesses' testimony and credibility, that Bolton credibly testified that Padilla had given the defendant his legal warnings prior to questioning him (RR. IV – 87).

12. The Court finds, based upon the reporter's record in this case and based upon this Court's evaluation of the witnesses' testimony and credibility, that any statements indicating that Padilla had not given the defendant his legal warnings prior to questioning him are not credible.

13. The Court finds, based upon the reporter's record in this case and based upon this Court's evaluation of the witnesses' testimony and credibility, that the defendant was not credible when he testified during

5

23

9

the suppression hearing that the officers never read him his legal warnings when they first started talking to him (RR. IV – 97-98).

14. The Court finds, based upon the reporter's record in this case and based upon this Court's evaluation of the witnesses' testimony and credibility, that the defendant was not credible when he claimed that he repeatedly told the officers that he did not want to talk to them (RR. IV – 99).

15. The Court finds, based upon the reporter's record in this case and based upon this Court's evaluation of the witnesses' testimony and credibility, that Bolton credibly testified that the delay in taking a formal interview of the defendant was due to an effort to build rapport with the defendant (RR. IV – 88).

16. The Court finds, based upon the reporter's record in this case and based upon this Court's evaluation of the witnesses' testimony and credibility, that the defendant's confession video begins with Bolton reading the defendant his legal warnings and with the defendant waiving his rights (St. Ex. 150).

17. The Court finds, based upon the reporter's record in this case and based upon this Court's evaluation of the witnesses' testimony and credibility, that the defendant related in his recorded confession that he

6

24

10

had a revolver in his waistband, that he pushed open the door to the car, that he started shooting, that he ran down along the bayou after the shooting, and that he threw away the gun along the bayou (St. Ex. 150).

**Requested Findings**

18. The Court finds, based upon the reporter's record in this case and based upon this Court's evaluation of the witnesses' testimony and credibility, that the defendant's original, unrecorded interview was custodial in nature.

19. The Court finds, based upon the reporter's record in this case and based upon this Court's evaluation of the witnesses' testimony and credibility, that the defendant was Mirandized prior to his original interrogation.

20. The Court finds, based upon the reporter's record in this case and based upon this Court's evaluation of the witnesses' testimony and credibility, that even if the defendant had not been Mirandized prior to his original interrogation, there was no evidence that the police deliberately employed a two-step interrogation process in order to circumvent the protections of *Miranda* and that the police did not deliberately employ such a two-step interrogation process. Rather, any delay in the administration of *Miranda* warnings was due to an effort to

7

11

build rapport with the defendant rather than to intentionally circumvent the protections of *Miranda*.

21. The Court finds, based upon the reporter's record in this case and based upon this Court's evaluation of the witnesses' testimony and credibility, that curative measures were taken before the second confession by the following procedures: (1) there was minimal reference to the original interrogation in the defendant's recorded statement, (2) different officers conducted the two interviews, (3) a substantial amount of time elapsed between the original interrogation at 5:15 p.m. and the formal recorded statement after midnight, and (4) *Miranda* warnings were again given and waived prior to the second statement, which was recorded.

BY THE FOLLOWING SIGNATURE, THE COURT ADOPTS THE FINDINGS OF FACT ON DEFENDANT'S MOTION TO SUPPRESS IN CAUSE NO. 1333231.

SIGNED this _____ day of ~~December~~, 2013.    MAR 0 7 2014

_____
MARC CARTER
Presiding Judge
228th District Court

8

26

12